**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| DANTLZER, INC., ET. AL.<br><br>    Plaintiffs,<br><br>       v.<br><br>JOSE LAMAS-BESOS, ET AL.,<br><br>    Defendants. | CIV. NO. 10-1004 (PG) |

**OPINION AND ORDER**

    Plaintiffs Dantlzer, Inc. and Bernardo Guerra-Nistal d/b/a BG Woods filed this action against Jose Lamas-Besos ("Lamas-Besos") and the Conjugal Partnership Lamas-Lamas. See *Amended Complaint*, Dockets No. 14. In the amended complaint, Plaintiff brings forth several causes of action against the defendants for damages, breach of contract and tortious interference with a contract. Id. Federal jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332. See id.

    In the amended complaint, the plaintiffs allege that Aljoma Lumber, Inc. ("Aljoma Lumber" or "the Company") is a corporation dedicated to the manufacture and distribution of wood products, including products from Universal Forest Products Company ("Universal"), in Puerto Rico and the Virgin Islands. See id. at ¶¶ 8-10. According to plaintiffs, in 2003, defendant Lamas-Besos, as the presiding officer of Aljoma Lumber, sold, assigned and transferred the Company's operations in Puerto Rico to plaintiffs in exchange for an initial disbursement of $400,000.00 and an additional sum of $4,029,000. One of the business accounts allegedly transferred in the transaction was the account of client Home Depot. See id. at ¶¶ 10-11, 14. In addition, the plaintiffs aver that, as part of the transaction, Aljoma Lumber was obligated to refrain from competing with plaintiffs with regards to the Home Depot account, among others. However, Lamas-Besos allegedly breached his obligations under the agreement by performing a "dual sale" of the assets and operations that had been sold to the plaintiffs to Universal. As a result, Universal began distributing products and materials locally, interfering with the plaintiffs' commercial operations. See id. at ¶¶ 14-16.

    Defendants now move for summary judgment requesting the dismissal of the claims against them on the grounds that the breach of contract claim is

meritless. See Docket No. 13. In addition, the moving defendants argue that the plaintiffs have failed to toll the applicable statute of limitations with respect to their tortious interference claim, and thus, it is time-barred. See id. The plaintiffs timely opposed the defendants' motion, see Docket No. 23, and the defendants replied, see Docket No. 32.

After careful review, the Court hereby **DENIES WITHOUT PREJUDICE** the pending motion for summary judgment for the reasons explained below.

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir.2000). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir.2004).

To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, see DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir.1997), through definite and competent evidence. See Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir.1994). Once the movant has averred that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-movant to establish the existence of at least one fact in issue that is both genuine and material. See Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990) (citations omitted). If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. See Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir.2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). However, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990).

At the summary judgment juncture, the Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir.2002). The Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000). This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Id.

## II. FACTUAL FINDINGS

As per the foregoing discussion, the Court found the following relevant facts were undisputed:

1. Plaintiff Dantzler, Inc. ("Dantzler") is a Florida corporation that conducts business in Puerto Rico.
2. Plaintiff Bernardo Guerra Nistal ("Guerra") is an individual who resides in Puerto Rico or Florida, and conducts Dantzler's business in Ponce, Puerto Rico, under the commercial name of "BG Woods."
3. Defendant Lamas-Besos is, and has been, a resident of Honduras since approximately 1964.
4. Back in 2003, Mr. Lamas-Besos was a shareholder of a company called Aljoma Enterprises, N.V. ("Aljoma Enterprises"), which was the sole shareholder of Aljoma Lumber.
5. In 2003, Dantzler and Aljoma entered into an agreement (the "Asset Purchase Agreement").
6. Lamas-Besos is not a named party to that agreement.
7. On May 14, 2008, plaintiffs filed a complaint in the Court of First Instance of Puerto Rico, San Juan Superior Part, against Aljoma Lumber, Home Depot, Universal and others, including unknown defendants. Said Puerto Rico action is styled *Dantzler, Inc. et al. v. Aljoma Lumber, Inc. et als.*, Civil No. KAC2008-0698(905) (the "Puerto Rico Litigation").
8. Lamas-Besos is not a defendant in the Puerto Rico Litigation.
9. In the Puerto Rico Litigation, plaintiffs allege, among other things, that Aljoma Lumber breached the Asset Purchase Agreement and that Aljoma Lumber, Universal and Home Depot tortiously interfered with Dantzler's commercial relationship with Home Depot.

CIV. NO. 10-1004 (PG)                                                    Page 4

10. Plaintiffs also allege in the Puerto Rico Litigation that the unlawful termination of the relationship between Dantzler and Home Depot, and subsequent substitution with "Aljoma/Universal" took place in May 2008.
11. The Puerto Rico Litigation is still pending.
12. On October 19, 2009, more than one year after the alleged May 2008 unlawful termination, plaintiffs filed this action. This action was removed into federal court from the Court of First Instance of Puerto Rico, Ponce Superior Part.

### III. APPLICABLE LAW

**A. Breach of Contract Claim**

Plaintiffs proffer a breach of contract claim under state law. Specifically, plaintiffs allege in the complaint that "Aljoma was obligated to refrain from competing with Plaintiffs with respect to the Home Depot operation and the other accounts in Puerto Rico and the Virgin Islands." See *Amended Complaint*, Docket No. 12 at ¶ 14. The plaintiffs also allege in their amended complaint that defendant Lamas-Besos, as owner of Aljoma Lumber, breached his obligations by "executing a dual sale with Universal Forest Products of the assets and operations that he had previously sold to the Plaintiffs." Id. at ¶ 15.

The defendants argue in their motion for summary judgment that Aljoma Lumber, and not Lamas-Besos, was a party to the agreement, and thus, the agreement cannot be enforced against Lamas-Besos. See Docket No. 13. In their opposition to defendants' motion for summary judgment, the plaintiffs submit that there are elements to the sale of Aljoma Lumber's operations, assets and accounts to plaintiffs to which Lamas-Besos verbally abided himself to. See Docket No. 23 at page 10. Accordingly, they request the opportunity to supplement their opposition pursuant to FED.R.CIV.P. 56(f)[1] after conducting discovery as to this issue. See id. at page 5; see also *Affidavit Luis Fernandez-Diaz*, Docket No. 25-4.

"Under Puerto Rico law, the elements of a cause of action for breach of contract are 1) a valid contract and 2) a breach by one of the parties to the

---

[1] Federal Rule of Civil Procedure 56(f) states as fallows:
If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1) deny the motion;
(2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
(3) issue any other just order.

contract." Westernbank Puerto Rico v. Kachkar, Civil No. 07-1606, 2009 WL 6337949, at *36 (D.P.R. December 10, 2009) (citing Torres v. Bella Vista Hosp., Inc., 523 F.Supp.2d 123, 152 (D.P.R.2007)). Article 1209 of Puerto Rico Civil Code provides that "[c]ontracts shall only be valid between the parties who execute them and their heirs … ." P.R. Laws Ann. tit. 31, § 3374. In other words, "[i]n Puerto Rico, contracts are generally only valid between the parties who execute them, and actions arising out of a contract can be prosecuted only by one contracting party against the other." Torres v. Bella Vista Hosp., Inc., 523 F.Supp.2d at 152 (citing F.C. Imports, Inc. v. First Nat'l Bank of Boston, 816 F.Supp. 78, 93 (D.P.R.1993)). In addition, "[u]nder Puerto Rican law, verbal contracts are valid and enforceable." Colon v. Blades, 570 F.Supp.2d 204, 210 n. 7 (D.P.R. 2008) (citing Morales v. Hosp. Hermanos Melendez, Inc., 447 F.Supp.2d 137, 142 (D.P.R.2006)).

In their opposition, the plaintiffs also set forth arguments compelling the Court to pierce the corporate veil with regards to Aljoma Lumber and thereby hold Lamas-Besos jointly and severally liable for Aljoma-Lumber's obligation to Plaintiff. See Docket No. 23 at pages 7-11. IN their reply, the defendants complain that the plainitffs' general references to the piercing of the corporate veil doctrine in their opposition are mere legal conclusions of an attorney which cannot be considered in the resolution of the summary judgment motion. See Docket No. 32 at page 5.

"Puerto Rico choice-of-law rules, which apply in cases brought in diversity before this court, dictate that Puerto Rico law applies to the question of whether to pierce the corporate veil in cases like the one at hand." Lamex Foods, Inc. v. Audeliz Lebron Corp., No. 09-2275, 2010 WL 500405, at *3 n. 10 (D.P.R. February 05, 2010) (citing Wadsworth, Inc. v. Schwarz-Nin, 951 F.Supp. 314, 320-22 (D.P.R. 1996)). "Under Puerto Rico law, there is a presumption that a corporate entity is separate from its controlling entity." Milan v. Centennial Communications Corp., 500 F.Supp.2d 14, 26 (D.P.R. 2007) (citing Fleming v. Toa Alta Development Corp., 96 P.R. Dec. 240, 243 (1968)). "The burden to pierce the corporate veil lies on the party seeking to pierce the veil." Colon v. Rinaldi, No. 01-1571, 2006 WL 3421862, at *6 (D.P.R. November 28, 2006) (quoting Rurico S. Díaz, Secretary of Consumer Affairs v. Comunidad San José, Inc., 130 P.R. Dec. 781, 800 (1992)). "Plaintiff may, however, pierce the corporate veil of a corporation 'by strong and robust evidence' showing the parent to have that degree of control over the subsidiary as to render the latter a mere shell for the former." Milan, 500

CIV. NO. 10-1004 (PG)                                                    Page 6

F.Supp.2d at 26 (citing Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 905 (1st Cir.1980)). "The principal reasons that justify the piercing of a corporate veil are that the corporation is being used to sanction fraud, provide injustice, evade obligations, defeat public policy, justify inequity, protect fraud or defend crime." Colon v. Rinaldi, 2006 WL 3421862 at *6 (internal citations omitted).

### B. Tortious Interference

In the amended complaint, the plaintiffs claim that Lamas-Besos' "dual sale" of Aljoma Lumber's assets constituted a tortious interference with a contract insofar as he knowingly, negligently and intentionally interfered with the commercial relationship existing between plaintiffs and Universal Forest and Home Depot, thereby causing plaintiffs damages. See Docket No. 12 at ¶ 18-20. However, in their motion for summary judgment, the defendants argue that this claim is time-barred because the alleged facts upon which plaintiffs base their claim of tortious interference have been known to them since at least May 2008, well over a year before this case was filed on October 19, 2009. See Docket No. 13 at page 9. In their response, the plaintiffs contend that the applicable statute of limitations was effectively tolled by the filing of the Puerto Rico Litigation on May 14, 2008 - which included unknown defendants - because Lamas-Besos is a solidary tortfeasor. See Docket No. 23.

The Supreme Court of Puerto Rico has held that the local torts statute, Article 1802 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31, § 5141, was sufficiently general to recognize a cause of action for tortious interference with a contract. See Sterling Merchandising, Inc. v. Nestle, S.A., 546 F.Supp.2d 1, 2-3 (D.P.R. 2008) (citing Gen. Office Prods. Corp. v. A.M. Capen's Sons, Inc., 115 P.R. Dec. 553 (1984)). To establish a cause of action for interference with a contractual relationship pursuant to Puerto Rico tort law, a plaintiff must establish four elements: (a) the existence of a contract with which a third party interferes; (b) that the interfering party acted with intent and knowledge of the existence of a contract; (c) that the plaintiff suffered damages; and (d) that a causal relationship exists between defendant's actions interfering with the contract and the damages suffered by plaintiff. See MVM Inc. v. Rodriguez, 568 F.Supp.2d 158, 171 (D.P.R. 2008) (citing Jusino Figueroa v. Walgreens of San Patricio, Inc., 155 P.R. Dec. 560, 575-576 (2001); Dolphin Int'l of P.R. v. Ryder Truck Lines, 127 P.R. Dec. 869, 879 (1991); A.M. Capen's Co. Inc. v. Blas Rossy, 12 F.Supp.2d 222, 231

CIV. NO. 10-1004 (PG)                                                  Page 7

(D.P.R.1998)). See also Ramallo Bros. Printing, Inc. v. El Dia, Inc., 392 F.Supp.2d 118, 143 (D.P.R. 2005).

The statute of limitations for tort actions pursuant to Article 1802 of the Civil Code of Puerto Rico is one year. See P.R. Laws Ann. tit. 31, § 5298; see also Arturet Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 12 (1st Cir. 2005). The one year period begins to run once "the claimant is on notice of her claim; that is, notice of the injury, plus notice of the person who caused it." Id. at 14. (internal quotations omitted); see also Rodriguez-Suris v. Montesinos, 123 F.3d 10, 13 (1st Cir. 1997).

There is no dispute that the alleged unlawful termination of the relationship between Dantzler and Home Depot, which brings about the present suit, took place in May 2008. See Findings of Fact No. 11. It is also uncontested that Lamas-Besos is not a party in the pending Puerto Rico Litigation. Nor is there any dispute that the present litigation was filed on October 19, 2009, some months past the one year from the accrual of the cause of action. Thus, unless the prescription period was effectively tolled as to the defendants herein, the instant action would be time-barred.

"Although prescription is an affirmative defense, once it has been raised, the burden of proving that prescription has been interrupted shifts to the plaintiff." Rodriguez v. Suzuki Motor Corp., 570 F.3d 402, 406 (1st Cir.2009) (quoting Tokyo Marine & Fire Ins. Co. v. Pérez y Cía., 142 F.3d 1, 4 (1st Cir.1998). Pursuant to Article 1873 of the Civil Code, a prescriptive period may be interrupted in one of three ways: by the institution of an action "before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." P.R. Laws Ann. tit. 31, § 5303. Because the statute of limitations begins to run regardless of whether plaintiff knows the real name of the tortfeasor or not, "plaintiffs are forced to file complaints without having complete information about the tortfeasors and must do so using fictitious names like John Doe." Garcia Rodriguez v. Laboy, 598 F.Supp.2d 186, 194 (D.P.R. 2008).

In addition, "[u]nder article 1874 of the Puerto Rico Civil Code, the interruption of prescription against one defendant also tolls the statute against any other defendants who are solidarily liable." Tokyo Marine, 142 F.3d at 4 (citing P.R. Laws Ann. tit. 31, § 5304). "Solidarity exists under Puerto Rico law when several people take part or cooperate in causing a wrong." Rodriguez v. Suzuki Motor Corp., 570 F.3d 402, 410 (1st Cir.2009) (quoting Arroyo v. Hosp. La Concepción, 130 P.R. Dec. 596, 604 (1992)). "The

CIV. NO. 10-1004 (PG)                                                    Page 8

essential feature of solidarity is that the solidary debtors are jointly responsible for the same obligation." Tokyo Marine, 142 F.3d at 5 (internal citations omitted).

## IV. ANALYSIS

The Court notes that the present motion for summary judgment was filed just a month after the case was removed to federal court. In addition, considering the Court's obligation to examine the facts in the light most favorable to the plaintiffs indulging them with all possible inferences to be derived therefrom, and pursuant to FED.R.CIV.P. 56(f), the Court will hereby **DENY WITHOUT PREJUDICE** the defendants' motion for summary and allow the parties to conduct further discovery as to the existence of a verbal agreement between plaintiffs and Lamas-Besos, and in the alternative, as to whether this Court should pierce Aljoma-Lumber's corporate veil and thereby hold Lamas-Besos jointly and severally liable for Aljoma-Lumber's obligation to plaintiffs under the Asset Purchase Agreement. The parties shall also conduct further discovery as to whether Lamas-Besos effectively sold to Universal the same assets sold to the plaintiffs, and his personal involvement in such a transaction, which allegedly resulted in both the Puerto Rico Litigation and the above-captioned claim.

## V. CONCLUSION

For the reasons stated above, this Court hereby **DENIES WITHOUT PREJUDICE** defendants' motion for summary judgment (Docket No. 13).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, June 22, 2010.

                                          S/ JUAN M. PEREZ-GIMENEZ
                                          JUAN M. PEREZ-GIMENEZ
                                          U.S. DISTRICT JUDGE